IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

                             No. 25-cr-20316-TLP

ANDRE GIBBS,

      Defendant.

MOTION TO SUPPRESS
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Comes now the defendant, Andre Gibbs, by and through undersigned counsel, pursuant to Federal Rule of Criminal Procedure 12(b)(3), and for his Motion to Suppress, states as follows:

## I.  INTRODUCTION

On October 21, 2025, agents of the Memphis Safe Streets Task Force proceeded to 713 West Raines Road in Memphis, Tennessee, to execute an arrest warrant for an individual wanted for a violation of the Sex Offender Registry. This warrant was not for Mr. Gibbs.

Mr. Gibbs was lawfully present on the property, which belonged to his cousin, and was preparing to cut the grass in the front yard. As the agents approached the residence, they observed Mr. Gibbs in the front yard. The agents had the name of the suspect they were searching for, as well as a photograph of the subject.  They asked Mr. Gibbs if he knew the subject. Mr. Gibbs said he did not.  The agents asked him who might be in the house.  Mr. Gibbs, not knowing that his cousin had previously exited the home, said his cousin, Germaine was inside.  This was not the individual the authorities were seeking.

Without any indication that Mr. Gibbs was the subject of the warrant or involved in any criminal activity, the agents ordered him at gunpoint to proceed toward them near the sidewalk in front of the residence. The agents then frisked Mr. Gibbs. While frisking him, they asked if he had a weapon on him. Mr. Gibbs responded that he was armed, and a pistol was subsequently recovered from his person.

Mr. Gibbs was not the individual named in the arrest warrant, had no outstanding warrants of his own and was not engaged in any suspicious or criminal behavior at the time. There were no reports or observations linking him to the wanted individual or any other crime.  For the reasons set forth below, Mr. Gibbs respectfully requests the Court to suppress the evidence against him.

## II.     ARGUMENTS AND AUTHORITIES

Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 2135 (1993), reaffirmed the Court's longstanding principle that searches and seizures "conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment— subject to a few specially established and well delineated exceptions."  One of the recognized exceptions is found in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 1884 (1968), where the Court said:

> "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot ...," the officer may briefly stop the suspicious person and make "reasonable inquiries" aimed at confirming or dispelling his suspicions."

Dickerson, 113 S.Ct. at 2135 (citations omitted).

United States v. Buchanon, 72 F.3d 1217 (6th Cir. 1995), in its consideration of what constitutes a "seizure" under the Fourth Amendment, quotes United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 1877 (1980):

> a person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

Buchanon, 72 F.3d at 1223-24.

The "relevant constitutional inquiry, then, is whether under the totality of the circumstances a reasonable person would have felt free to end this encounter." Id. at 1224; see also Ingram v. City of Columbus, 185 F.3d 579, 591 (6th Cir. 1999) (citing Mendenhall (an individual is seized when "by physical force or show of authority, his freedom of movement is restrained.")).

In Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375 (2000), police officers received an anonymous tip that a young black male wearing a plaid shirt was at a bus station and was carrying a firearm. The Supreme Court said that the issue before it was "whether the anonymous tip that a person carrying a gun is, without more, sufficient to justify a police officer's stop and frisk of that person." J.L., 120 S.Ct. at 1377. When the police arrived at the bus stop, "[o]ne of the officers approached J.L., told him to put his hands up on the bus stop, frisked him, and seized a gun from J.L.'s pocket." Id. The nature of the seizure in J.L. was substantially less egregious than in the case at hand. Many officers were present barking orders at Mr. Gibbs, and at least one pointed the barrel of a long-armed rifle directly at him as they ordered him to approach in their direction in Gestapo like fashion. Mr. Gibbs risked being killed on the spot if he had not complied, which thankfully he did and thus the seizure was effected. California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 1550-51 (1991).

3

The stop and the frisk are separate considerations in the Fourth Amendment analysis. United States v. Smith, 574 F.2d 882, 885-86 (6th Cir. 1978). A citizen may not be detained even "momentarily" without reasonable suspicion. United States v. Buchanon, supra, 72 F.3d at 1225-26. Once the point of detention is reached an officer "must have a reasonable articulable suspicion [of criminal activity], or else the stop and detention are illegal." United States v. Garcia, 866 F.2d 147, 150 (6th Cir. 1989). An investigative stop "must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." The totality of the circumstances must give the "detaining officers . . . a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690 (1981). The Court in Cortez, quoting Chief Justice Warren in Terry v. Ohio, supra, said that "[t]his demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment's jurisprudence." Id. (see also United States v. Clardy, 819 F.2d 670, 673 (6th Cir. 1987).

This Court, in United States v. Grant, 920 F.2d 375, 384-85 (6th Cir. 1990), has stated that a police officer's "hunch or generalized suspicion of criminal activity will not be sufficient to justify the detention of a citizen." Because of the objective and particularized requirements of a stop, conduct which is typical of a broad category of innocent people is a weak basis for suspicion and cannot justify a seizure. United States v. Crawford, 891 F.2d 680, 681 (8th Cir. 1989), citing Reid v. Georgia, 448 U.S. 438, 100 S.Ct. 2752, 2754 (1979); see also United States v. Grant, supra, 920 F.2d at 386. Evidence may be present which "may allow certain inferences to be drawn," but "describe too many individuals to create a reasonable suspicion that the particular defendant is engaged in criminal activity." United States v. Hernandez-Alvarado, 891 F.2d 1414, 1418-19 (9th Cir. 1989).

4

The arbitrary decision of the officers to seize the defendant and the dragnet approach of the officers' investigation in this instance is evidenced by one of the agents pointing a rifle at Mr. Gibbs who was simply trying to mow the lawn at a home that his cousin had occupied since 2021. The officers had no reasonable suspicion that Mr. Gibbs was engaging in any criminal activity. In fact, they had confirmed by asking Mr. Gibbs his name and, more importantly, their photo of the subject they were seeking, they did not have their man. Accordingly, the firearm and any derivative evidence should be suppressed. United States v. Buchanon, 72 F.3d 1217, 1226 (6th cir. 1996).

Alternatively, even if the officers had reasonable suspicion to stop Mr. Gibbons—which they most certainly did not—the firearm should be suppressed because of the unlawful frisk. In Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130 (1993), the Supreme Court said that one of recognized exceptions to the warrant requirement of the Fourth Amendment is found in Terry v. Ohio, supra, and it explained the limited frisk permitted by Terry:

> Terry further held that "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a patdown search "to determine whether the person is in fact carrying a weapon." 88 S.Ct. at 1881. "The purpose of this limited search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence . . . ." (citation omitted]). If the protective search goes beyond what is neces¬sary to determine if the suspect is armed, it is no longer valid under Terry and its fruits will be suppressed." [citation omitted].

Dickerson, 113 S.Ct. at 2137-38.

In Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338 (1979), police officers executed a warrant for narcotics in a tavern. In doing so, the officers patted down numerous customers, and one officer found heroin in the pockets of the petitioner, Ybarra. The Supreme Court held that the frisk of Ybarra was "simply not supported by a reasonable belief that he was armed and presently

dangerous, a belief which this Court has invariably held must form the predicate to a pat down of a person for weapons." Ybarra, 100 S.Ct. at 343. The officers had no prior knowledge of Ybarra, and lacked any particular reason to believe that he would assault them. Relying upon its prior decision in Terry, the Court said:

> Under [Terry] a law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted... Nothing in Terry can be understood to allow a generalized search for weapons" or indeed, any search whatever for anything but weapons. The "narrow scope" of the Terry exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place.

Ybarra, 100 S.Ct. at 343.

The government can in no way sustain its burden of proof to show an objective basis that the defendant himself was armed. In fact, the evidence is devoid of any evidence pertaining to the defendant's conduct in this respect.

## III.    CONCLUSION

Mr. Gibbs has demonstrated that the officers' actions in this case clearly violated his rights guaranteed under the Fourt Amendment and respectfully requests this Court to suppress all the evidence against him.

Respectfully submitted,

TYRONE J. PAYLOR
FEDERAL DEFENDER

s/ NEEDUM L. GERMANY
Assistant Federal Defender
200 Jefferson Avenue, Suite 200
Memphis, TN 38103
(901) 544-3895

6

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing Motion to Suppress and Incorporated Memorandum of Law in support was forwarded by electronic means via the Court's electronic filing system to Regina Brittenum, Assistant U.S. Attorney, 167 N. Main, Suite 800, Memphis, TN 38103, this 26th day of January, 2026.

s/ NEEDUM L. GERMANY
Assistant Federal Defender